UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RAMON DEJESUS,                          :
                                        :    HONORABLE JOSEPH E. IRENAS
             Petitioner,                :
                                        :    CIVIL ACTION NO. 08-1158 (JEI)
      v.                                :
                                        :
UNITED STATES OF AMERICA,               :            **OPINION**
                                        :
             Respondent.                :

**APPEARANCES:**

RAMON DEJESUS, *pro se*
# 27324-050
MVCC 555
I Cornell Drive
Philipsburg, Pennsylvania 16866

CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
By: Andrew Carey, Esq.
970 Broad Street
Suite 700
Newark, New Jersey 07102
      Counsel for Respondent


**IRENAS**, Senior District Judge:

     Before the Court is Petitioner Ramon Dejesus's

("Petitioner") Motion to Vacate, Set Aside or Correct Sentence

brought under 28 U.S.C. § 2255.  For the reasons set forth below,

Petitioner's motion will be denied without an evidentiary

hearing.


**I.**

     On July 11, 2005, Leonicio Vasquez arrived on a flight from

the Dominican Republic at Liberty International Airport in

Newark, New Jersey. (Answer at 1.)[1]  Upon his arrival at the
airport, Vasquez retrieved a suitcase from the baggage claim
area, which was later searched by Immigration and Customs
Enforcement ("ICE") agents.  (*Id.* at 1-2.)  During this search,
ICE agents discovered approximately three kilograms of cocaine
hidden under a false bottom in the suitcase.  (*Id.*)  Vasquez
admitted to ICE agents that he expected to receive $1,000 for
smuggling the cocaine into the United States, and ICE agents
placed him under arrest.  (Petition at 3.)

     Vasquez agreed to cooperate with the ICE agents by
performing a controlled delivery of the cocaine to Petitioner.
(Presentence Investigation Report at 4, ¶ 9.)  On July 12, 2005
Vasquez spoke to Petitioner, who agreed to pick up the cocaine
from Vasquez at a diner in Union City, New Jersey.  (Answer at
2.)  Later that night, Vasquez arrived at the diner carrying a
bag containing approximately three kilograms of sham narcotics.[2]
(*Id.*)  ICE agents observed Petitioner, his sister, Ramona Cruz,
and a third individual arrive at the diner.  (*Id.*)  Cruz entered
the diner and told Vasquez he would be paid for the drugs that

_____

     [1]References to "Petition," "Answer," and "Response" pertain
to the present Petition for a Writ of Habeas Corpus filed on
March 6, 2008 by Petitioner Ramon DeJesus, the Government's
Answer thereto, and Petitioner's Response to Government's Answer
filed on April 2, 2008, respectively.

     [2]Sham narcotics were substituted for genuine cocaine for
safety reasons.  (Answer at 2.)

following Thursday.  (Answer, Ex. A, Attachment A, ¶ 4.)
Petitioner then walked into the diner and took the bag of
counterfeit narcotics from Vasquez.  (*Id.* at ¶ 5.)  Soon after,
ICE agents arrested Petitioner and Cruz.  (*Id.*)

A criminal complaint was filed against Petitioner and Cruz
on July 12, 2005.  (Answer, Ex. A.)  Petitioner initially agreed
to plead guilty to an Information and signed a plea agreement
with the U.S. Government.[3]  (Response at 6.)  Petitioner later
withdrew his plea agreement on April 18, 2006 and cancelled the
plea hearing scheduled for April 21, 2006.

On April 28, 2006, a grand jury charged Petitioner in a
superseding indictment with conspiring to distribute and possess
with intent to distribute 500 grams or more of cocaine in
violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 21 U.S.C. §
846.  (Answer, Ex. B.)  Petitioner pled not guilty to the charge
on May 2, 2006.  The court ordered discovery and the parties
began preparing for trial.

At some point over the next four months, Petitioner changed
his decision to proceed to trial and reached a second plea
agreement with the Government on August 22, 2006 (the "Second
Plea Agreement").  (Answer, Ex. D.)  As part of this Second Plea

---

[3]While the Court does not have a copy of this initial
agreement, both parties state that Petitioner agreed to plead
guilty and signed a plea agreement regarding the July 12, 2005
criminal complaint.

3

Agreement, the Government proposed a two-level reduction in Petitioner's offense level for acceptance of personal responsibility under U.S.S.G. § 3E1.1(a). (Answer, Ex. D, Sched. A at ¶ 8.)  If the Court found that Petitioner met the criteria of 18 U.S.C. § 3553(f),[4] the Second Plea Agreement stipulated that Petitioner would qualify for an additional two-level reduction. (*Id.* at ¶ 9.)  The Second Plea Agreement also included a waiver provision, which provided that Petitioner agreed to waive his right to collaterally attack any sentence imposed within the guidelines set forth in the agreement. (*Id.* at ¶ 11.)

---

[4]18 U.S.C. § 3553(f) reads in pertinent part:

[T]he court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission . . . without regard to any statutory minimum sentence, if the court finds at sentencing . . . that–
(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(3) the offense did not result in death or serious bodily injury to any person;
(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . . and was not engaged in a continuing criminal enterprise . . . and
(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

18 U.S.C. § 3553(f) (2008).  *See also* U.S.S.G. § 5C1.2.

4

This Court accepted Petitioner's guilty plea on September 6, 2006.  On February 13, 2007, Petitioner appeared before this Court for sentencing.  According to the Sentencing Guidelines, Petitioner qualified for a base offense level of twenty-eight for the amount of cocaine involved in the offense.  *See* U.S.S.G. § 2D1.1(c)(6).  Pursuant to the Second Plea Agreement, Petitioner received a two-level reduction in his offense level for acceptance of personal responsibility under U.S.S.G. § 3E1.1(a).  This Court awarded Petitioner an additional two-level reduction in his offense level for meeting the criteria of 18 U.S.C. § 3553(f).  *See* U.S.S.G. § 5C1.2.  Thus, Petitioner's total offense level was twenty-four, with a corresponding sentencing range of fifty-one to sixty-three months.  *See* U.S.S.G., ch. 5, pt. A.  This Court sentenced Petitioner to a prison term of fifty-four months, followed by a five-year term of supervised release.  (Answer, Ex. E.)  Petitioner did not directly appeal his sentence.

## II.

Section 2255 provides, in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed

the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2006). Therefore, Petitioner is entitled to relief only if he can establish that he is in custody in violation of federal law or the Constitution.

A district court is given discretion in determining whether to hold an evidentiary hearing on a motion made under § 2255. *See Gov't of V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). When exercising that discretion, the court must first determine whether the petitioner has alleged facts, if proved, would entitle him to relief, and if so, if an evidentiary hearing is needed to determine the truth of the allegations. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 291 (3d Cir. 1991). A district court may dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records 'show conclusively that the movant is not entitled to relief.'" *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (quoting *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992); *Forte,* 865 F.2d at 62).

### III.

### A.

At the outset, the Court will address the Government's contention that the Petition is time barred based on Petitioner's

failure to file his motion within the one-year time period prescribed under § 2255.  *See* 28 U.S.C. § 2255(f) (2008).

A defendant has one year to file a § 2255 motion, which typically runs from the date his judgment of conviction became final.  *See* 28 U.S.C. § 2255(f)(1) (2008); *Clay v. United States,* 537 U.S. 522, 524 (2003).  If a defendant does not directly appeal his conviction to a court of appeals, the judgment becomes final on the date when the time to file a direct appeal expires. *Kapral v. United States,* 166 F.3d 565, 577 (3d Cir. 1999).  A defendant must appeal his criminal conviction within ten days of the later of either the date the district court entered the judgment or the filing of the Government's notice of appeal. Fed. R. App. P. 4(b)(1)(A)(i); *see also United States v. Lynch,* 158 F.3d 195, 196 n.1 (3d Cir. 1998).  An inmate confined in an institution timely files an appeal if he deposits his motion in the prison mail system on or before the last day for filing. Fed. R. App. P. 4(c)(1); *Houston v. Lack,* 487 U.S. 266, 276 (1988) (holding that an inmate filed his appeal at the moment he delivered it to prison authorities).

In the instant case, this Court entered the judgment of conviction against Petitioner on February 13, 2007.  (Answer, Ex. E.)  Neither the Government nor Petitioner appealed the conviction and thus the judgment became final on February 23, 2007.  Applying the one-year time limitation, Petitioner had

7

until February 23, 2008 to timely file a § 2255 motion.
Petitioner deposited his motion in the Moshannon Valley
Correctional Center mail system on February 19, 2008. (Petition
at 16.)  Thus, Petitioner's § 2255 motion is not time barred,
because Petitioner filed his motion within the one-year time
limitation of § 2255.[5]


### B.

Before addressing the merits of Petitioner's ineffective
assistance of counsel claims, the Court must address whether the
present motion should be dismissed based on Petitioner's waiver
of his right to "file any appeal, any collateral attack, or any
other writ or motion" as stipulated in his plea agreement.
(Answer, Ex. D.)

A defendant may waive his right to file an appeal if he

---

[5]The Government made two errors in calculating the one-year
time limitation.  First, the Government calculated the time
period from the wrong judgment date.  After initially noting the
correct judgment date of February 13, 2007, the Government
calculated the time limitation from February 13, 2006. (Answer
at 5.)  Second, the Government applied Sup. Ct. R. 13, which
governs when a defendant must file an appeal of a decision by a
court of appeals. (Answer at 5.)  *See* Sup. Ct. R. 13; *Clay v.
United States,* 537 U.S. 522, 525 (2003) (holding that an
appellate court's affirmation of a criminal conviction becomes
final when the time for filing a petition for certiorari
expires).  The Government should have applied Fed. R. App. P.
4(b), which governs when a defendant must file an appeal of a
criminal conviction by a district court. *See* Fed. R. App. P.
4(b); *United States v. Lynch,* 158 F.3d 195, 196 n.1 (3d Cir.
1998).

agrees to the waiver knowingly and voluntarily, and enforcing the waiver would not constitute a miscarriage of justice. *United States v. Khattak,* 273 F.3d 557, 563 (3d Cir. 2001).[6]  Rather than identify specific instances, the Third Circuit set forth certain factors a court should consider when determining whether enforcing a waiver would constitute a miscarriage of justice, including:

> [t]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Id.* (quoting *United States v. Teeter,* 257 F.3d 14, 25-26 (1st Cir. 2001)).  A miscarriage of justice may arise "when 'plea proceedings [are] tainted by ineffective assistance of counsel.'" *United States v. Barlow,* No. 05-3324, 2008 U.S. App. LEXIS 4099,

---

[6]*Khattak* did not address the specific issue of whether a defendant could waive his right to a collateral appeal. *See United States v. Khattak,* 273 F.3d 557 (3d Cir. 2001).  However, the Third Circuit recently enforced the collateral waiver provision of a plea agreement, finding that the *Khattak* factors applied equally to waivers of collateral appeals. *See United States v. Mabry,* No. 06-2867, 2008 U.S. App. LEXIS 15956, at *15-16 (3d Cir. July 28, 2008) ("Although our precedent has consistently followed th[e *Khattak*] approach, we now reaffirm that a district court has an independent obligation to conduct an evaluation of the validity of a collateral waiver.").  Furthermore, district courts within the Third Circuit have regularly applied the *Khattak* standard to determine the validity of collateral appeal waivers. *See, e.g., Baker v. United States,* No. 04-5641, 2007 U.S. Dist. LEXIS 26028, at *14 (D.N.J. Apr. 5, 2007) ("[T]he standard set forth by the Third Circuit in *Khattak* applies to waivers of the right to collaterally attack a sentence pursuant to § 2255.").

at \*6 (3d Cir. Feb. 25, 2008) (quoting *Teeter,* 257 F.3d at 25
n.9).  *See also United States v. Akbar,* 181 Fed. Appx. 283, 286
(3d Cir. 2006).  Third Circuit courts have regularly followed
other circuits in "holding that claims of ineffective assistance
of counsel at sentencing, as opposed to claims that the waiver or
plea itself was tainted by ineffective counsel, do not excuse
knowing and voluntary waivers of post-conviction rights." *Baker
v. United States,* No. 04-5641, 2007 U.S. Dist. LEXIS 26028, at
\*18 (D.N.J. Apr. 5, 2007) (citations omitted).  *See also Simon v.
United States,* No. 05-5503, 2006 U.S. Dist. LEXIS 88435, at \*24
(D.N.J. Dec. 5, 2006).

        Petitioner does not contend that he agreed to the waiver
either unknowingly or involuntarily, and there is nothing in the
record that shows otherwise.[7]  (Response at 5.)  Petitioner
signed both the Second Plea Agreement and an Application for
Permission to Enter Plea of Guilty form, which stipulated that
Petitioner understood and accepted the terms and conditions of
the plea agreement.  (Answer, Exs. D & E.)  The Court also
questioned Petitioner with respect to his understanding and
willing acceptance of the waiver provision in the Second Plea
Agreement.  Thus, the Court concludes Petitioner knowingly and
voluntarily agreed to waive his right to file a collateral

---

        [7]Petitioner even specifically states as a point heading in
his Response, "Ramon Dejesus is not suggesting that his agreement
to plea was not knowing or intelligent."  (Response at 3.)

appeal.

In applying the *Teeter* factors, the Court further concludes that a miscarriage of justice would not result if the waiver were enforced.  Petitioner has not presented the Court with any extenuating circumstances or unusual facts that would render enforcement of the waiver to be a miscarriage of justice. Instead, Petitioner appears to argue that a miscarriage of justice would result because his attorney withdrew the initial plea agreement without the Petitioner's knowledge or consent. (Response at 3.)  The Court recognizes that ineffective assistance of counsel during the plea proceedings may provide a basis for finding a miscarriage of justice.  *See Baker*, 2007 U.S. Dist. LEXIS 26028, at *16-17.  However, as set forth more fully below, the Court does not find any of Petitioner's ineffective assistance of counsel claims related to the plea proceedings to be meritorious, and thus the waiver precludes Petitioner from bringing the present petition.

## C.

Although the Court concludes that Petitioner waived his right to collaterally attack his sentence pursuant to the Second Plea Agreement, the Court will nevertheless address Petitioner's claims of ineffective assistance of counsel.  In order to prevail on his ineffective assistance of counsel claims, Petitioner "must

establish that 1) the performance of counsel fell below an objective standard of reasonableness; and, 2) counsel's deficient performance prejudiced the defense." *United States v. Otero,* 502 F.3d 331, 334 (3d Cir. 2007) (citing *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984)).  A reviewing court must be "'highly deferential'" in assessing counsel's performance, and "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .'" *United States v. Hankerson,* 496 F.3d 303, 310 (3d Cir. 2007) (quoting *Strickland,* 466 U.S. at 689).  The court must make "'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Thomas v. Varner,* 428 F.3d 491, 499 (3d Cir. 2005) (quoting *Strickland,* 466 U.S. at 689).

To satisfy the second prong of the *Strickland* analysis, Petitioner must establish a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Hankerson,* 496 F.3d at 310 (quoting *Strickland,* 466 U.S. at 694).  If a petitioner pleaded guilty, the Third Circuit has "interpreted *Strickland's* prejudice prong to require a petitioner to show that 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Peppers,* No. 06-1810, 2008 U.S.

12

App. LEXIS 7552, at *9 (3d Cir. Apr. 8, 2008) (quoting *Hill v. Lockhart,* 474 U.S. 52, 57 (1985)).  Furthermore, the Third Circuit has held that "a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of such a plea by showing that counsel's performance fell beneath the standard articulated in [*Strickland*]."  *United States v. Ordaz,* 111 Fed. Appx. 128, 131-32 (3d Cir. 2004) (quoting *Hill*, 474 U.S. at 58).

Petitioner argues he was denied his right to effective assistance of counsel because his attorney: (1) withdrew a plea agreement without Petitioner's knowledge or consent; (2) failed to move for a downward departure under U.S.S.G. § 3E1.1(b); and (3) failed to move for a downward departure based on cultural assimilation.

Petitioner initially argues his counsel was ineffective for withdrawing the first plea agreement and prolonging the case without Petitioner's knowledge or consent.  (Response at 6-7.) In so doing, Petitioner argues his counsel precluded the possibility of receiving a one-level departure under U.S.S.G. § 3E1.1(b).[8]

However, the record contradicts Petitioner's allegation that his attorney withdrew the first plea agreement and proceeded to

---

[8]The Government acknowledges that one of the reasons it did not move for a departure under § 3E1.1(b) is because Petitioner withdrew the first plea agreement.  (Answer at 12.)

prepare for trial without his knowledge or consent.  After the withdrawal of the first plea agreement, Petitioner pled not guilty to the drug charge and submitted certified statements in support of a motion to suppress.  (Answer, Ex. C.)   In these statements, Petitioner alleged that he believed Vasquez was giving him "jams and sweets" and that he was unaware that Vasquez intended to give him cocaine.  (*Id.* at ¶ 10.)   These allegations are consistent with Petitioner's plea of not guilty, and demonstrate Petitioner's willingness to challenge the Government's charge and prepare for trial.  Petitioner knew he and his attorney were contesting the drug charge and consented through his participation.  Thus, there is no merit to Petitioner's allegations that his counsel acted without his knowledge or consent.

Petitioner contends he received ineffective assistance of counsel because his attorney failed to move for several downward departures.  Failure to argue for an appropriate downward departure may constitute ineffective assistance of counsel.  *See United States v. Headley,* 923 F.2d 1079, 1084 (3d Cir. 1991) (finding defendant's counsel ineffective where counsel failed to argue for an applicable downward departure); *Rolon v. United States,* Civ. No. 03-3902, Crim. No. 01-583, 2006 U.S. Dist. LEXIS 58492, at *24 (D.N.J. Aug. 21, 2006) ("The Third Circuit 'has held that the failure to argue an appropriate downward departure

14

constitutes ineffective assistance of counsel.'") (quoting *Vega v. United States,* 269 F. Supp. 2d 528, 533 (D.N.J. 2003)).

The failure to seek various downward departures by Petitioner's counsel was not unreasonable because counsel was precluded from seeking any downward departures or downward adjustments based on the terms of the Second Plea Agreement.[9] *See Baker,* 2007 U.S. Dist. LEXIS 26028, at *23-24. Furthermore, each of the suggested downward departures offered by Petitioner would not be applicable.

Petitioner asserts his counsel was ineffective for failing to move for a one-level downward departure for acceptance of responsibility under U.S.S.G. § 3E1.1(b).[10]   (Petition at 5.)

_____

[9]The second plea agreement provides that "[t]he parties agree not to seek or argue for any upward or downward departure or any upward or downward adjustment not set forth herein." (Answer, Ex. D, Sched. A, ¶ 10.) *See United States v. Williams*, 510 F.3d 416, 425 (3d Cir. 2007) (holding that a defendant breached a plea agreement where he argued for a downward departure in violation of an express term that prohibited arguments in support of downward departures).

[10]U.S.S.G. § 3E1.1(b) states:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and *upon motion of the government* stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to

However, "'an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing.'" *United States v. Drennon,* 516 F.3d 160, 161-62 (3d Cir. 2008)(quoting U.S.S.G. § 3E1.1(b), app. note 6 (2007)). Here, the Government did not move for this downward departure. While the Government's discretion is subject to constitutional restraints,[11] *see Drennon,* 516 F.3d at 162, there is no showing of any unconstitutional motives on the part of the Government. Instead, the Government did not move for this downward departure based on Petitioner's decision to withdraw his first plea agreement, which resulted in the Government's preparations for trial. (Government's Answer at 12.)  The Government interviewed witnesses, prepared *Jencks* materials and an exhibit list, took photographs of the crime scene, responded to motions, and spent thousands of dollars preparing transcripts. (*Id.*)  Considering the extensive trial preparations, the Government acted well within its discretion in refusing to move for a downward

_____

> allocate their resources efficiently, decrease the offense level by 1 additional level.

*Id.* (emphasis added).

[11]The Government cannot base its decision on a "'defendant's race, religion or gender.'"  *United States v. Drennon,* 516 F.3d 160, 162 (3d Cir. 2008) (quoting *United States v. Abuhouran,* 161 F.3d 206, 212 (3d Cir. 1998)).  Furthermore, the Government's refusal must be "'rationally related to [a] legitimate government end.'"  *Id.* at 163 (quoting *Wade v. United States,* 504 U.S. 181, 186 (1992)).

departure under § 3E1.1(b).

Petitioner also argues that his counsel was ineffective for not arguing for a downward departure based on cultural assimilation.  Third Circuit courts have only recognized this downward departure in the context of illegal reentry cases, because a defendant may have an "atypical or extraordinary" reason for reentering the country, which may warrant a downward departure.  *See Sanchez v. United States,* No. 07-3790, 2008 U.S. Dist. LEXIS 2237, at *9 (D.N.J. Jan. 11, 2008).  Other circuits have specifically rejected downward departures based on cultural assimilation where the only charge is a drug offense, because the defendant "was not motivated [to commit the offense] by his emotional and familial ties to this country."  *United States v. Braxton,* 175 Fed. Appx. 380, 381 (2d Cir. 2006).  *See also United States v. Aguilar-Portillo,* 334 F.3d 744, 750 (8th Cir. 2003) ("A downward departure for 'cultural assimilation" could simply have no role in sentences for drug crimes . . . .").[12]  A downward

---

[12]Within his cultural assimilation argument, Petitioner makes reference to his "family ties."  "A downward departure based on a convict's family ties and responsibilities should occur 'only in exceptional cases, and only if the circumstance is present in the case to an exceptional degree.'"  *Adeyemi v. United States,* 2006 U.S. Dist. LEXIS 48782, at *14-15 (D.N.J. July 5, 2006) (Irenas, S.J.) (quoting Commentary to U.S.S.G. § 5K2.0, 3(C)).  While the Presentence Investigation Report does indicate that Petitioner provides financial support to his children, there are no additional circumstances present that would support a downward departure for family ties and responsibilities.  Thus, Petitioner has not presented evidence of the type of extraordinary and exceptional circumstances that

departure based on cultural assimilation is not applicable in

this case.[13]

    In conclusion, even assuming that Petitioner did not waive

---

would warrant a downward departure for family ties and
responsibilities.

    [13]Petitioner also references his status as a deportable
alien and his consent to deportation within his cultural
assimilation argument.  At the time of his conviction, Petitioner
was residing in the United States as a permanent resident.
(Presentence Investigation Report at 10).  The Judgment indicates
that as a condition of supervised release, Petitioner was to
cooperate with Immigration and Customs Enforcement to resolve any
problems with his status in the United States.  Neither of the
proffered downward departures related to deportation have any
merit.  First, noting that the Third Circuit has not yet
recognized a downward departure based on status as a deportable
alien, such a departure could only be appropriate "if he
demonstrates 'unique circumstances particular to a certain case
which make that case so unusual that the Commission would not
have considered it.'"  *Bradley v. United States*, No. 03-6211,
2005 U.S. Dist. LEXIS 33411, at *14 (D.N.J. July 8, 2005)
(quoting *United States v. Angel-Martinez*, 988 F. Supp. 475, 484
(D.N.J. 1997).  Here, Petitioner merely asserts that he is
deportable, and thus, he presents no unusual circumstances
justifying a downward departure.
    Second, a downward departure for consent to deportation is
not permitted absent a motion by the Government.  *United States
v. Marin-Castaneda*, 134 F.3d 551, 555 (3d Cir. 1998) (noting that
"a defendant without a nonfrivolous defense to deportation
presents no basis for downward departure under section 5K2.0 by
simply consenting to deportation and (2) in light of the
judiciary's limited power with regard to deportation, a district
court cannot depart downward on this basis without a request from
the United States Attorney").  There is no evidence that
Petitioner consented to deportation as a condition of his
sentence.  Instead, he makes a bare assertion regarding such
consent in the present Petition.  Further, the Government did not
move for a downward departure, and thus, an attempt for such a
downward departure by Petitioner's counsel would have been
unsuccessful.

his right to file the present petition pursuant to the Second Plea Agreement, the Court finds that there is no evidence that Petitioner's assistance of counsel was ineffective.  The evidence in the record shows that Petitioner's counsel acted reasonable in his representation of Petitioner and that Petitioner did not suffer prejudice from his counsel's assistance.

## IV.

For the reasons set forth above, the Court will deny Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.  Because the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue.  *See* 28 U.S.C. § 2253(c).  The Court will issue an appropriate order.

Dated:   July 30, 2008

s/ *Joseph E. Irenas*
**JOSEPH E. IRENAS, S.U.S.D.J.**